IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

PATSY M. VAUGHAN                                           PLAINTIFF

v.                         Civil No. 09-2127

MICHAEL J. ASTRUE, Commissioner
Social Security Administration                            DEFENDANT

## MEMORANDUM OPINION

Plaintiff, Patsy Vaughan, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying her claim for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

## I.    Procedural Background:

The plaintiff filed her applications for DIB and SSI on June 17, 2004, alleging an onset date of March 3, 2003, due to head trauma, hand numbness, right foot problems, lung disease, pelvic inflammatory disease, and kidney problems.  Tr. 62-63, 100-101, 17-118.  Her applications were initially denied and that denial was upheld upon reconsideration. Tr. 27, 37, 38, 301, 304, 309.  Plaintiff then made a request for a hearing by an Administrative Law Judge (ALJ).  An administrative hearing was held on December 5, 2008. Tr. 311-363.  Plaintiff was present and represented by counsel.

At this time, plaintiff was 43 years of age and possessed a high school education and two years of college. Tr. 76, 90, 316. She was also licensed as a Certified Nurse Aide. Tr. 316. Plaintiff had past relevant work ("PRW") experience as a waitress and store laborer/cashier. Tr. 19, 85-86, 102-109, 127-134, 139, 317-329.

On April 24, 2007, the ALJ found that plaintiff's back disorder, carpal tunnel syndrome, asthma/COPD, osteoarthritis, and mood disorder were severe, but did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. Tr. 12-15. After partially discrediting plaintiff's subjective complaints, the ALJ determined that plaintiff retained the residual functional capacity to perform light work that does not involve climbing scaffolds, ladders or ropes; will not expose her to unprotected heights or dangerous equipment/machines; and, does not require exposure to concentrated dust, fumes, smoke, chemicals, or noxious gases. Plaintiff was also unable to drive motor vehicles as part of her work and could only occasionally climb ramps and stairs, stoop, bend, crouch, crawl, kneel, and balance. With her right hand, Plaintiff could not perform rapid extension and flexion and must only perform work where the instructions are simple and non-complex; the interpersonal contact with co-workers and the public is superficial and incidental to the work performed; the complexity of the tasks is learned and performed by rote; the work is routine and repetitive; there are few variables and little judgment required; and, the supervision required is simple, direct, and concrete. Tr. 16. With the assistance of a vocational expert, the ALJ found plaintiff could perform work as a hotel/motel maid or shirt presser. Tr. 20.

Plaintiff appealed this decision to the Appeals Council, but said request for review was denied on July 8, 2009. Tr. 3-5. Subsequently, plaintiff filed this action. ECF No. 1. This case

2

is before the undersigned by consent of the parties.  Both parties have filed appeal briefs, and the case is now ready for decision.  ECF No. 8, 9.

II.    **Applicable Law:**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002).  Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision.  The ALJ's decision must be affirmed if the record contains substantial evidence to support it.  *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003).  As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently.  *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001).  In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed.  *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity.  *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A).  The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § § 423(d)(3),

3

1382(3)(c).  A plaintiff must show that his or her disability, not simply their impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits:  (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience.  *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity.  *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

### III.   __Evidence Presented:__

Records indicate Plaintiff had a history of asthma and pelvic inflammatory disease.  Tr. 159-169.  In February 2003, Plaintiff was involved in a motor vehicle accident.  Tr. 170-182. Records indicate that she was the unrestrained driver of a vehicle that rolled over causing her to strike her head and lose consciousness.  It took approximately 10 minutes to extricate her from the vehicle. It appears as though Plaintiff was under the influence of alcohol at the time of the accident.  Upon arrival at the hospital, she was awake and alert.  Although she had an abrasion on her left forehead, she reported only pelvic pain and right elbow pain.  X-rays of her cervical spine, right elbow, and pelvis and a CT scan of her head were all normal.  Plaintiff told the doctor that she had an underdeveloped left lung and had been advised by her doctor to smoke

4

marijuana to clear out her lungs. As such, she had been smoking marijuana and cigarettes since age nine. Shortly after her arrival, Plaintiff's husband and a male friend arrived at the hospital to visit Plaintiff. Both had alcohol on their breath. After visiting a short time, they left via the elevator. However, when the nurse went to check on Plaintiff, she was no longer in her room. It appeared as though she had run down the fire escape for fear of being arrested. She was later found getting into the vehicle with her husband and his friend. Plaintiff stated she did not want to go back inside. Due to the intoxication of all three, a cousin was called to transport them home. Tr. 170-182.

On April 16, 2004, Plaintiff sought emergency treatment for right lower abdominal and back pain, vomiting, loss of appetite, and dysuria with a foul odor for three days. Tr. 144-153. She reported similar symptoms every month with her period. Following an examination and blood work, Plaintiff was diagnosed with pelvic inflammatory disease. The doctor prescribed Phenergan. Tr. 144-153.

On June 25, 2004, Plaintiff was diagnosed with carpal tunnel syndrome on the right, due to a positive Tinels and pain. Tr. 292. She was prescribed a wrist splint and Ibuprofen. Tr. 292.

On July 25, 2005, Plaintiff complained of pain in her back and lumbar area with no urinary burning or frequency. Tr. 290. She did, however, report pressure in her left suprapubic area. Plaintiff indicated that she had been told she had pelvic inflammatory disease. An examination revealed tenderness in the left inguinal area with no masses or hernias detected. Dr. Robert Baker diagnosed her with an inguinal hernia vs. an ovarian cyst. A CT scan of her abdomen and pelvis were ordered. Tr. 290.

On July 29, 2004, a CT scan of Plaintiff's abdomen was normal.  Tr. 184.  A scan of her pelvis revealed a small cyst in her right ovary, likely a physiologic cyst.  Tr. 184, 294.

On September 15, 2004, Plaintiff complained of chest pain, stating it hurt to breathe.  Tr. 188-201.  A chest x-ray revealed nodular prominence of the lower pole of the right hilum.  This could represent a summation of normal thoracic markings, but a follow-up with a well-positioned PA and lateral study was recommended for further evaluation.  An EKG was normal.  Plaintiff was diagnosed with pleuritic chest pain.  Preliminary blood work was positive for amphetamines and marijuana.  Tr. 188-201.

On October 15, 2005, Plaintiff fell while skating with a child and broke her left wrist.  Tr. 213-217.  X-rays revealed a fracture of the left distal radius with mild impaction and dorsal angulation.  Records also indicate that she had consumed 32 ounces of Vodka and orange juice.  Plaintiff was prescribed Lorcet and advised to rest.  Tr. 213-217.

X-rays of Plaintiff's left wrist dated October 18, 2005, revealed excellent alignment of the distal radial fractures.  Tr. 211.

On May 10, 2006, Plaintiff had been experiencing nausea and vomiting, fever, and congestion for six days.  Tr. 204-210.  She was assessed with bronchitis and gastroenteritis and prescribed clear fluids and Phenergan.  Her history of asthma was noted and an albuterol updraft treatment was administered while in the emergency room.  Tr. 204-210.

On November 14, 2006, Plaintiff underwent a general physical exam with Dr. William Swindell.  Tr. 220-229.  She complained of trauma to the head, numbness to the right hand and food, and problems with her lungs and kidneys.  This caused her to drop things frequently and experience difficulty supporting herself with her right knee.  She was also diagnosed with asthma

6

as a child and experienced recurrent episodes of shortness of breath and pneumonia.  However, she continued to smoke cigarettes and marijuana.  Plaintiff reported being involved in an automobile accident in 2003, at which time she flipped her car and sustained a head injury.  She stated that she was clinically dead at the time and had to be resuscitated, although she was alert and oriented upon her arrival at the hospital.[1]  Her husband purportedly arrived at the hospital and took her home against medical advice.  She later left her husband and lived alone in an Idaho forest for six months.  According to her report, she was found and taken back to Texas and then moved to Fort Smith.  In the midst of the confusion, she and her husband separated and she moved in with her mother.  Plaintiff complained of current memory problems resulting from the accident that prevented her from working.

Plaintiff also complained of posterior left-sided headaches lasting 24 hours per day, with some being more intense than others.  Nausea and occasional vomiting were associated with them, as was photophobia.  Dr. Swindell noted that Plaintiff suffered from incontinence, with both urgency and stress incontinence for which she had not undergone evaluation.  She had a chronic cough with intermittent wheezing, as well.  Plaintiff reported that the marijuana helped with her cough and helped her expectorate phlegm and mucous.  She also had an eczema-type condition around her ankles with excoriated dry skin.  An examination revealed a normal range of motion in all areas with no significant limitations of movement, muscle weakness, atrophy, or sensory abnormalities.  Her gait and coordination were good.  Plaintiff could hold her pen and

---

[1]We note that records from the emergency room dated February 2003 do indicate that Plaintiff was knocked unconscious and had to be extricated from her vehicle.  However, the records make no reference to Plaintiff being clinically dead or needing recuscitation.  Tr. 170-182.

AO72A
(Rev. 8/82)

write, touch her fingertips to her palm, grip 70% with her right hand and 90% with her left, oppose thumb to fingers, pick up a coin, walk on heel and toes, and squat and arise from a squatting position with difficulty.  Dr. Swindell diagnosed her with a history of a concussion resulting in headaches and memory loss, asthma/COPD, possible carpal tunnel syndrome of the right wrist, chronic pain syndrome, internal derangement of the right knee vs. osteoarthritis, and urinary frequency/urgency.   He stated that she appeared to be seriously limited by the combination of her head injury, asthma, and chronic orthopedic condition.  Tr. 220- 229.

On November 16, 2006, Plaintiff was evaluated by Dr. Patricia Walz.  Tr. 231-236.  She stated she had applied for disability due to asthma and pneumonia.  Plaintiff worked in factory jobs, but always ended up sick.  She also had problems remembering things and had been fired on numerous occasions. Plaintiff reported that her mental symptoms began at age nine, after she was raped.  Her first psychiatric treatment was at about the age of 10.  She had many psychiatric hospitalizations and four or five suicide attempts.  Plaintiff even stated she had swallowed razor blades because of a man.  Tr. 231-236.

Plaintiff indicated that her older sister beat her up and locked her in the closet after school.  She would let her out just before her mother returned home.  By report, Plaintiff completed high school with C's and D's and was enrolled in special education for 10th grade Government.  She was not skilled in math and reported reading problems following her car accident.   Dr. Walz estimated her IQ to fall between 75 and 85.  Plaintiff was diagnosed with schizoaffective disorder vs. major depression, alcohol abuse vs. dependence, and personality disorder with borderline traits.  Her speech was clear, but she did not seem to comprehend Dr. Walz's questions at times and seemed to answer questions that were not asked.  She reported

AO72A
(Rev. 8/82)

having friends with whom she sat around and watched movies.  Dr. Walz noted that her concentration , persistence, and pace seemed impaired, and she may have an impairment in language processing and academic skills.  However, she noted no evidence of exaggeration or malingering.  Tr. 231-236.

X-rays of Plaintiff's knees dated December 18, 2006, were normal.  Tr. 238.

On December 29, 2006, Plaintiff underwent pulmonary function tests.  Tr. 240-244.  The results indicated mild obstructive pulmonary impairment.  However, the evaluator noted that Plaintiff gave only fair/poor effort despite instructions to force expiration.  Tr. 240-244.

On February 20, 2007, Dr. Scott McCarty performed a mental diagnostic evaluation and memory assessment of Plaintiff.  Tr. 246-249.  Plaintiff stated that she was applying for disability due to problems with her lungs.  She denied any current mental allegations and denied endorsing any remarkable or significant additional emotional symptomatology.  However, Plaintiff did allege a past consistent with borderline personality disorder characterized by her past history of mood instability, poor anger and impulse control including rage episodes, suicidal behavior and gestures and attempts, poor boundaries, substance abuse, history of inappropriate (abusive) relationships with men, chronic feelings of emptiness, and a history of cutting.

Plaintiff graduated high school and had completed two years of nursing school.  Tr. 246-249.  She disclosed one prior arrest and 22 day incarceration for an undisclosed offense.  Her work history consisted primarily of waitress work, and she reported losing several jobs due to poor memory and an inability to remember her job duties.  Plaintiff stated that she did not speak to her associates, rather simply did her work and went home.  Records disclosed a significant history of problematic drinking and marijuana use.  She began abusing alcohol at age 11 and

9

reported a history of blackouts, although she denied symptoms of withdrawal.   Currently, Plaintiff stated she drank once monthly in the amount of two to three bourbon and cokes.   She began using marijuana at the age of nine and last used 1.5 months prior.

Plaintiff exhibited good eye contact, was well groomed, and gave no indications of pain. Tr. 246-249.   She was calm, cooperative, and friendly; exhibited a euthymic mood; had a congruent affect, and unremarkable speech.   Her speech was also logical, relevant, organized, and goal-directed.   Plaintiff denied any symptoms of a formal thought disorder, experience of thought withdrawal insertion or control, delusions, or suicidal or homicidal ideations.   Her test scores suggested average memory.   Dr. McCarty diagnosed Plaintiff with alcohol abuse in sustained full remission, rule out alcohol dependence in partial remission and borderline personality disorder, and assessed Plaintiff with a global assessment of functioning ("GAF") score of 71-81.   Although Plaintiff reported needing help with dressing and bathing due to alleged physical limitations, she could drive, shop, and use a checkbook without help or supervision.   However, she required help managing her finances due to her reported difficulty spelling and performing addition.   Dr. McCarty noted that she had a sufficient capacity to communicate and interact in a socially adequate manner, and related well and easily with the examiner and his secretary.   However, she alleged that she did not like people because they were mean, rude, and disgusted her.   Dr. McCarty found this statement odd, as she stated it while smiling and joking.   He also found that she tracked adequately, exhibited excellent concentration and attention, evidenced good persistence, and evidenced good place throughout testing without any remarkable psychomotor slowing.   Plaintiff also demonstrated a more than adequate capacity to perform tasks within an acceptable time frame.   Tr. 246-249.

10

On September 19, 2007, treatment noted from Good Samaritan Clinic indicated that Plaintiff was very anxious and picking at her head and scalp.  Tr. 287.  She had reportedly been involved in a motor vehicle accident in the past and had gotten glass her in head, causing her to pick at it.  The doctor diagnosed her with anxiety, asthma, and cellulitis of the scalp.  He prescribed Vistaril, Proventil, and Keflex.  At this time, plaintiff was neither homicidal nor suicidal, was well oriented, and had normal mood, affect, and memory.  R. 287.

On November 26, 2008, Plaintiff complained of a rash on her legs for three months.  Tr. 298-300.  She also reported a history of asthma, but admitted she had not had medication for this in over a year due to poor finances.  Her symptoms included a cough, dyspnea, excessive sputum, wheezing, a rash, itching, and dryness on both ankles.  Plaintiff also complained of depression, anxiety, and mental disturbance.  Dr. Price assessed Plaintiff with a skin rash, skin lesion, and a history of asthma.  She was prescribed Aristocort, Ventolin, and Benadryl.  Tr. 298-300.

## IV.    Discussion:

Plaintiff contends that the ALJ erred by failing to develop the record upon repeated requests from counsel for Plaintiff to order a complete psychological consultative examination.  "A disability claimant is entitled to a full and fair hearing under the Social Security Act."  *Halverson v. Astrue*, 600 F.3d 922, 933 (8th Cir. 2010) (internal quotations and citation omitted).  Where "the ALJ's determination is based on all the evidence in the record, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations," the claimant has received a "full and fair hearing."  *Id*.  (internal quotations and citation omitted).  "The ALJ is required to order medical examinations and tests only if the

11

medical records presented to him do not give sufficient medical evidence to determine whether

the claimant is disabled." *Id*. (internal quotations and citation omitted).

> While the ALJ has an independent duty to develop the record in a social security
> disability hearing, the ALJ is not required "to seek additional clarifying
> statements from a treating physician unless a crucial issue is undeveloped."
> *Stormo* [*v. Barnhart*], 377 F.3d [801,] 806 [(8th Cir. 2004)].    The
> Commissioner's regulations explain that contacting a treating physician is
> necessary only if the doctor's records are "inadequate for us to determine whether
> [the claimant is] disabled" such as "when the report from your medical source
> contains a conflict or ambiguity that must be resolved, the report does not contain
> all the necessary information, or does not appear to be based on medically
> acceptable clinical and laboratory diagnostic techniques."    20 C.F.R.
> §§404.1512(e), 416.912(e).

*Goff v. Barnhart*, 421 F.3d 785, 791 (8th Cir. 2005).

However, in the present case, we note that Plaintiff was evaluated by Dr. Patricia Walz

in November 2006.  Tr. 231-236.  Dr. Walz estimated her IQ to fall between 75 and 85 and

diagnosed her with schizoaffective disorder vs. major depression, alcohol abuse vs. dependence,

and personality disorder with borderline traits.   Some problems with comprehension,

concentration, persistence, and pace were noted, but Plaintiff reported no social difficulties.  Tr.

231-236.

Likewise, in February 2007, Plaintiff underwent a mental diagnostic evaluation and

memory assessment with Dr. Scott McCarty.  Tr. 246-249.  She denied any current mental

allegations and denied endorsing any remarkable or significant additional emotional

symptomatology.  Records disclosed a significant history of problematic drinking and marijuana

use.  Plaintiff exhibited good eye contact, was well groomed, and gave no indications of pain.

Tr. 246-249.  She was calm, cooperative, and friendly; exhibited a euthymic mood; had a

congruent affect, and unremarkable speech.  Her speech was also logical, relevant, organized,

and goal-directed.  Plaintiff denied any symptoms of a formal thought disorder, experience of thought withdrawal insertion or control, delusions, or suicidal or homicidal ideations.  Her test scores suggested average memory.  Dr. McCarty diagnosed Plaintiff with alcohol abuse in sustained full remission, rule out alcohol dependence in partial remission and borderline personality disorder, and assessed Plaintiff with a global assessment of functioning ("GAF") score of 71-81.  Dr. McCarty noted that she had a sufficient capacity to communicate and interact in a socially adequate manner, and related well and easily with the examiner and his secretary. He also found that she tracked adequately, exhibited excellent concentration and attention, evidenced good persistence, and evidenced good place throughout testing without any remarkable psychomotor slowing.  Plaintiff also demonstrated a more than adequate capacity to perform tasks within an acceptable time frame.  Tr. 246-249.

It seems clear to the undersigned that the ALJ had ample evidence upon which to base her opinion.  Contrary to Plaintiff's argument, she underwent two psychological evaluations. The ALJ had no obligation to develop the record further, simply because Plaintiff reported a history of marijuana and alcohol abuse and made misrepresentations with regard to the nature and severity of the injuries she sustained in her accident in 2003.  The Eighth Circuit has held that an ALJ may discount subjective complaints if inconsistencies are apparent in the evidence as a whole.  *Dunahoo v. Apfel*, 241 F.3d 1033, 1037 (8th Cir. 2001).  Accordingly, we find not find error in the ALJ's refusal to order a third psychological evaluation.

We must also examine the ALJ's decision to ensure that she followed the five-step sequential evaluation process and that substantial evidence supports her determination.  When evaluating the credibility of plaintiff's subjective complaints the ALJ is required to make an

13

express credibility determination detailing his reasons for discrediting the testimony. *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001).

The standard of evaluation is not whether plaintiff experiences pain, but if the pain alleged is intense enough to cause functional limitations. *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001) (holding that the real issue is not whether the plaintiff is experiencing pain, but how severe and whether it prevents her from performing any kind of work).

An ALJ may not disregard a claimant's subjective complaints solely because the objective medical evidence does not fully support them. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). The ALJ is required to take into account the following factors in evaluating the credibility of a claimant's subjective complaints: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) dosage, effectiveness, and side effects of medication; (4) precipitating and aggravating factors; and (5) functional restrictions. *See id.* The ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him to reject the plaintiff's complaints. *Masterson v. Barnhart,* 363 F.3d 731, 738 (8th Cir. 2004). However, the ALJ need not explicitly discuss each *Polaski* factor. *Strongson v. Barnhart,* 361 F.3d 1066, 1072 (8th Cir. 2004). The ALJ only need acknowledge and consider those factors before discounting a claimant's subjective complaints. *Id.* Even so, the ALJ may discount a claimant's subjective complaints if there are inconsistencies between the alleged impairments and the evidence as a whole. *Dunahoo v. Apfel*, 241 F.3d 1033, 1037 (8th Cir. 2001); *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001).

In the present case, plaintiff alleged disability due to head trauma, hand numbness, right foot problems, lung disease, pelvic inflammatory disease, and kidney problems. The record does

14

indicate that Plaintiff was involved in a car accident in 2003 and struck her head. However, a CT scan of her head was negative and Plaintiff complained of no symptoms associated with this injury until many years later. *See Forte v. Barnhart*, 377 F.3d 892, 895 (8th Cir. 2004) (holding that lack of objective medical evidence is a factor an ALJ may consider). Interestingly, she also sought no treatment for these alleged symptoms. We do note, as does the ALJ, that Plaintiff's version of the events surrounding her accident and the injuries sustained varies greatly from that contained in her medical records. She told Dr. Swindell that she sustained a life threatening head injury, was clinically dead, and had to be resuscitated on the way to the hospital.

Plaintiff has also alleged disability due to problems with her wrists. Records do indicate that Plaintiff fell in 2005 and broke her left wrist. Tr. 213-217. X-rays conducted three days later indicated excellent alignment. Tr. 211. While we do find some evidence to indicate that she was diagnosed with carpal tunnel syndrome of the right wrist, we can find no nerve conduction studies to support this diagnosis. Tr. 220-229, 292. *See Trenary v. Bowen*, 898F.2d 1361, 1364 (8th Cir. 1990) (holding that a mere diagnosis is not sufficient to prove disability, absent some evidence to establish a functional loss resulting from that diagnosis). Her condition was also treated conservatively, via a wrist splint and Ibuprofen. Tr. 292. *See Smith v. Shalala*, 987 F.2d 1371, 1374 (8th Cir. 1993) (holding that treating physician's conservative treatment was inconsistent with plaintiff's allegations of disabling pain). It does not appear that surgery was ever recommended or even suggested to treat her condition. And, no consistent pattern of treatment is evidenced by the record. A general physical exam conducted in 2006 revealed a normal range of motion in all areas with no significant limitations of movement, muscle weakness, atrophy, or sensory abnormalities. She could hold her pen and write, touch her

15

fingertips to her palm, grip 70% with her right hand and 90% with her left, oppose thumb to fingers, and pick up a coin. Tr. 220-229. Therefore, while we do not doubt that Plaintiff's condition caused her to experience some degree of pain, we do not agree that it was disabling. *See Gowell v. Apfel*, 242 F.3d at 796.

Plaintiff alleges problems with her right foot/knee, making it difficult for her work. However, aside from her physical exam with Dr. Swindell, we can find no evidence showing that she sought treatment for foot or knee pain. Further, Dr. Swindell's exam revealed a normal range of motion in all areas with no significant limitations of movement, muscle weakness, atrophy, or sensory abnormalities. Plaintiff's gait and coordination were good and she could walk on heel and toes. Tr. 220-229. X-rays of her knees conducted a few months later were also normal. Tr. 238.

While records do indicate that Plaintiff had a history of asthma and Dr. Swindell's exam did reveal some wheezing, we note that pulmonary function studies revealed only mild obstructive pulmonary impairment. Tr. 240-244. The evaluator indicated that Plaintiff gave only fair/poor effort despite instructions to force expiration. In 2005, Plaintiff was diagnosed with pleuritic chest pain after complaining of chest pain. Tr. 188-201. However, no further treatment was documented. We can also find no evidence to indicate that Plaintiff consistently took medication to prevent or treat her asthma or lung disease.[2] As such, we can not say that her asthma/lung condition was disabling.

---

[2]We do note that Plaintiff reported smoking marijuana and cigarettes to clear her lungs. Tr. 170-182.

Plaintiff also alleged kidney problems as a grounds for disability. The record does indicate that Plaintiff was treated from back pain and dysuria a couple of times during the relevant time period. Tr. 144-153, 290. She was ultimately diagnosed with pelvic inflammatory disease and an right ovarian cyst. Each time, Plaintiff was treated conservatively and released home. There is no indication that her condition warranted follow-up treatment or that she was consistently prescribed medication to treat her condition.

As for her mental impairments, as previously noted, Plaintiff underwent two psychological evaluations. Dr. Walz diagnosed Plaintiff with schizoaffective disorder vs. major depression, alcohol abuse vs. dependence, and personality disorder with borderline traits. Her speech was clear, but she did not seem to comprehend Dr. Walz's questions at times and seemed to answer questions that were not asked. She reported having friends with whom she sat around and watched movies. Dr. Walz noted that her concentration , persistence, and pace seemed impaired, and she may have an impairment in language processing and academic skills. Tr. 231-236.

A few months later, Plaintiff underwent a second mental diagnostic evaluation along with a memory assessment with Dr. Scott McCarty. Tr. 246-249. At this time, she alleged lung impairment as the sole basis for disability. Tr. 246. Plaintiff denied endorsing any remarkable or significant emotional symptoms. Tr. 240. Testing indicated that Plaintiff retained the mental RFC to perform the requirements of sustained work activity. Plaintiff exhibited excellent grooming and hygiene, good eye contact, and she did not show any indication of pain. Tr. 247. She was calm, cooperative, and friendly with a euthymic mood and congruent affect. Plaintiff's speech and thought processes were logical, relevant, and organized. She scored in the normal

17

range on memory scales.  Dr. McCarty concluded that Plaintiff demonstrated sufficient capacity to communicate and interact in a socially adequate manner, despite her inconsistent claims to the contrary.  Tr. 247-249.  He characterized her as having adequate cognitive mental capacity for basic work-like tasks, excellent concentration and attention, good persistence, good pace, and normal psychomotor skills.  Tr. 249.  Finally, Dr. McCarty concluded Plaintiff retained more than adequate capacity to perform tasks within an acceptable time-frame. Tr. 249.

We note the vast difference in these two opinions.  However, it is the ALJ's function to resolve conflicts among the various treating and examining physicians.  *Estes v. Barnhart*, 275 F.3d 722, 725 (5th Cir. 2002).  The weighing of evidence and the resolution of conflicts is properly in the realm of the Commissioner, and not the Courts.  *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001).  We can find no error in the ALJ's determination that Dr. McCarty's opinion was entitled to more significant weight than Dr. Walz's.

There is simply no evidence to indicate that Plaintiff sought out treatment for her alleged psychiatric problems.  *See Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007) (lack of formal treatment by a psychiatrist, psychologist, or other mental health professional is a significant consideration when evaluating plaintiff's allegations of disability due to a mental impairment).  It is also clear that none of Plaintiff's other examining doctors ever documented any serious mental impairments.  In 2006, Dr. Swindell found no evidence of psychosis or of a serious mood disorder.  Tr. 225.  In September 2007, notes from the Good Samaritan Clinic indicate that plaintiff was anxious, but was not homicidal/suicidal, was well oriented, and had a normal mood, affect, and memory.  Tr. 287.  Further, in 2008, she was noted to be oriented to time, place, and

18

person and her memory was intact for both recent and remote events.  Tr. 299.  As such, it seems

clear to the undersigned that Plaintiff's mental impairments were not as severe as she has alleged.

Plaintiff contends that her lack of financial resources excuses her failure to seek more

consistent treatment for her impairments.  However, there is no evidence that Plaintiff attempted

to consistently obtain low cost medical treatment or that claimant had been denied care because

of her poverty.  *See Hutsell v. Sullivan*, 892 F.2d 747, 750 n. 2 (8th Cir. 1989) (noting that ""lack

of means to pay for medical services does not *ipso facto* preclude the Secretary from considering

the failure to seek medical attention in credibility determinations.").  Records also indicate that

Plaintiff was able to obtain cigarettes and marijuana, at least on occasion, to allegedly treat her

asthma.  Accordingly, we do not find that her failure to seek treatment is excused.

Plaintiff's activities of daily living also undermine her claim of disability.  On July 20,

2004, Plaintiff completed a supplemental interview outline indicating the ability to care for her

personal hygiene, do the laundry, wash dishes, change the sheets, prepare frozen dinners, count

change, drive, watch television, listen to the radio, and visit friends and relatives who visited her

home.  She completed an adult function report on September 15, 2006, reporting the ability to

clean all day, help her mother open bottles, care for her personal hygiene (although she did not

care what she looked like), prepare simple meals daily, vacuum, mop, sweep, wash dishes, rake,

dust, sit outside in a lawn chair daily, ride in a car, count change, watch television, and attend

appointments with her doctor and lawyer.  Tr. 92-99.  She alleged she could stand and walk for

only one-half minute and sit for one-half minute, but told Dr. Walz that she went jogging and

was able to shop at a small grocery store.  Tr. 75, 235.  On August 28, 2007, Plaintiff indicated

that she could care for her animals, care for her personal hygiene although combing her hair was

painful, prepare small meals, go outside occasionally, ride in a car, shop for food in stores, count change, watch television, draw, visit friends, and sit, talk and eat.  Tr. 119-126.  *See Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996) (ability to care for one child, occasionally drive, and sometimes go to the store); *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996) (ability to visit neighbors, cook, do laundry, and attend church); *Novotny v. Chater*, 72 F.3d at 671 (ability to carry out garbage, carry grocery bags, and drive); *Johnston v. Shalala*, 42 F.3d 448, 451 (8th Cir. 1994) (claimant's ability to read, watch television, and drive indicated his pain did not interfere with his ability to concentrate); *Woolf v. Shalala*, 3 F.3d 1210, 1213-1214 (8th Cir. 1993) (ability to live alone, drive, grocery shop, and perform housework with some help from a neighbor).

Plaintiff's mother, Patricia McMullen, testified on her behalf.  Tr. 347-359.  She indicated that Plaintiff began having memory problems shortly after her accident in 2003 and continued to have problems at present.  Ms. McMullen stated that Plaintiff stayed in her room and mostly kept to herself.  She did "dishes and little things like that" and was able to play games on her computer.  Tr. 347-359. The ALJ properly considered this testimony but found it unpersuasive.  This determination was within the ALJ's province.  *See Siemers v. Shalala*, 47 F.3d 299, 302 (8th Cir. 1995); *Ownbey v. Shalala*, 5 F.3d 342, 345 (8th Cir. 1993).

We must also review the ALJ's RFC assessment.  RFC is the most a person can do despite that person's limitations.  20 C.F.R. § 404.1545(a)(1).  A disability claimant has the burden of establishing his or her RFC.  *See Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004).  "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own

descriptions of his or her limitations." *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir.

2004); *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005).  Limitations resulting from

symptoms such as pain are also factored into the assessment.  20 C.F.R. § 404.1545(a)(3).  The

United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual

functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001).

Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical

evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,*

353 F.3d 642, 646 (8th Cir. 2003).

The ALJ properly considered plaintiff's subjective complaints, the objective medical

evidence, and the RFC assessments of three consultative examiners, and several non-examining,

consultative doctors.   On January 11, 2007, Dr. Bill Payne  completed  a  physical  RFC

assessment.  Tr. 273-285.  He concluded Plaintiff could perform light work with no additional

limitations.  Dr. Payne noted that Plaintiff complained of orthopedic residuals of a motor vehicle

accident, but her most recent exam had shown full range of motion of the spine and joints,

without spasm, synovitis, or deformity.  No weakness or atrophy were noted and her gait and

coordination were found to be normal.  Tr. 273-285. This was affirmed by Dr. Jerry Thomas.

Tr. 280.

On February 22, 2007, Dr. Jerry Henderson, completed a mental RFC assessment and a

psychiatric review technique form.  Tr. 250-267.   After reviewing only Plaintiff's medical

records, he diagnosed Plaintiff with mood disorder by history, borderline personality disorder,

and alcohol abuse in reported remission.  He found Plaintiff to be moderately limited with regard

to carrying out detailed instructions, maintaining attention and concentration for extended

21

periods, sustaining an ordinary routine without special supervision, working in coordination with or proximity to others without being distracted by them, completing a normal workday and work week without interruptions from psychologically based symptoms, performing at a consistent pace without an unreasonable number and length of rest periods, accepting criticism from supervisors, and setting realistic goals or making plans independently of others. She was found to have only mild restriction of activities of daily living, moderate difficulties in maintaining social functioning, and mild difficulties in maintaining concentration, persistence, or pace. No episodes of decompensation were noted. Tr. 250-267. This assessment was affirmed by Dr. Brad Williams. Tr. 252, 254.

We note Dr. Swindell's assessment that plaintiff was seriously limited by the combination of her head injury, asthma, and chronic orthopedic condition. Tr. 220- 229. However, a review of the findings of his general physical exam indicate that his opinion is not consistent with his objective findings. It is clear to the undersigned that Dr. Swindell based his opinion upon Plaintiff's subjective complaints, rather than the findings of her physical exam. As such, we do not believe it is entitled to substantial weight. *See Vandenboom v. Barnhart*, 421 F.3d 745, 749 (8th Cir. 2005) (holding the ALJ was entitled to give less weight to doctor's opinion, because it was based largely on Plaintiff's subjective complaints rather than on objective medical evidence).

While Plaintiff and her mother both testified that Plaintiff had begun experiencing problems with memory since her automobile accident in 2003, the record also makes clear that Plaintiff was using marijuana, amphetamines, and alcohol during the relevant time period. It is widely known that alcohol use impairs thought and memory. A quick search of marijuana side

22

effects also reveals that marijuana impacts both learning and memory and can last for day or weeks after the acute effects of the drug wear off. *See* National Institute of Drug Abuse, NIDA INFOFACTS: MARIJUANA, *at* http://www.nida.nih.gov/infofacts/marijuana.html. Further, confusion and anxiety are also side effects of Methamphetamine use. *See* Methamphetamine Risks & Effects, *at* http://www.methresources.gov/effects.html. Accordingly, it seems clear to the undersigned that Plaintiff's problems with memory and learning could well be the result of her chronic marijuana and drug abuse, rather than an actual cognitive impairment.

Thus, giving proper credit and weight to the medical records and the RFC assessments contained within the record, we find that substantial evidence supports the ALJ's conclusion that plaintiff retained the residual functional capacity to perform light work that does not involve climbing scaffolds, ladders or ropes; will not expose her to unprotected heights or dangerous equipment/machines; and, does not require exposure to concentrated dust, fumes, smoke, chemicals, or noxious gases. We also agree that Plaintiff is unable to drive motor vehicles as part of her work because she has no driver's license and can only occasionally climb ramps and stairs, stoop, bend, crouch, crawl, kneel, and balance. With her right hand, she is unable to perform rapid extension and flexion and must only perform work where the instructions are simple and non-complex; the interpersonal contact with co-workers and the public is superficial and incidental to the work performed; the complexity of the tasks is learned and performed by rote; the work is routine and repetitive; there are few variables and little judgment required; and, the supervision required is simple, direct, and concrete.

We next evaluate the testimony of the vocational expert. Testimony from a vocational expert based on a properly-phrased hypothetical question constitutes substantial evidence. *See*

23

*Cruze v. Chater,* 85 F.3d 1320, 1323 (8th Cir.1996); *cf. Hinchey v. Shalala,* 29 F.3d 428, 432 (8th Cir.1994) (when hypothetical question does not encompass all relevant impairments, VE's testimony does not constitute substantial evidence to support the ALJ's decision). The ALJ's hypothetical question needs to "include only those impairments that the ALJ finds are substantially supported by the record as a whole." *Id.* (citing *Stout v. Shalala,* 988 F.2d 853, 855 (8th Cir.1993)); *see also Morse v. Shalala,* 32 F.3d 1228, 1230 (8th Cir.1994).

The vocational expert testified that a person who maintained the RFC previously described could perform work as a hotel/motel maid and shirt presser. Tr. 359-360. Based on all of the evidence of record, we find substantial evidence supports the ALJ's conclusion that plaintiff could still perform work that exists in significant number in the national economy.

## V.    Conclusion:

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the plaintiff benefits, and thus the decision should be affirmed. The undersigned further finds that the plaintiff's Complaint should be dismissed with prejudice.

DATED this 2nd day of December 2010.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)